UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,

- against -

DALE HARPER, JOACHIM PIERRE LOUIS,
LUC DESMANGLES, BEAYAEH KAMARA,
and TANAEL DANIEL,

                 Defendants.
------------------------------------------------------------ x

**MEMORANDUM & ORDER**

No. 13-CR-601 (RJD)

RAYMOND J. DEARIE, District Judge:

       The State of New York requires applicants for commercial driver's licenses to pass a written test designed to evaluate an applicant's knowledge of how to safely operate a commercial vehicle. The government alleges that a scheme to bribe security guards at the Department of Motor Vehicles ("DMV") to allow cheating on the test corrupted the process and caused the State to issue commercial learner's permits to unqualified applicants. After a four-day trial, a jury found defendants Dale Harper, Joachim Pierre Louis, Tanael Daniel, Luc Desmangles, and Beayaeh Kamara guilty of conspiracy to unlawfully produce commercial driver's license permits and commercial driver's licenses, in violation of 18 U.S.C. § 1028(a)(1), and conspiracy to commit honest-services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346.

       By way of a Rule 29(c) motion, defendants now advance two arguments for their acquittal: (1) the government failed to prove an essential element of honest services mail fraud under 18 U.S.C. §§ 1341 and 1346, that a fiduciary relationship existed between the security guards and the DMV, and (2) the evidence fails to establish that defendants aided and abetted the production of false identification documents, and the government did not charge defendants with aiding and abetting, which made it error for the Court to allow the jury to find defendants guilty

if they "caused" the documents to be made. Neither of these arguments has merit. Defendants' motion is denied.

BACKGROUND

In New York, drivers of certain commercial vehicles, including school buses, tractor trailers, and trucks transporting hazardous waste, are required to possess a commercial driver's license. An applicant for a commercial driver's license must first obtain a learner's permit. To do so, an applicant must possess a valid driver's license and pass a written test designed to evaluate the applicant's knowledge of how to safely operate a commercial vehicle. The written tests are multiple choice format and given in English or Spanish. Applicants are not allowed to consult written or other materials while taking the test. They are also prohibited from consulting with other individuals or leaving the testing area before completing the exam. To prevent cheating on the written test, security guards are posted in the testing area. These security guards were not directly employed by the DMV, but were employed by a private firm servicing the DMV under a contract with New York State.

Upon the completion of a written multiple choice test, the test is graded immediately, and if the applicant passes he or she is issued a temporary learner's permit. Subsequently, the applicant receives a photo identification learner's permit in the mail. In order to obtain a commercial driver's license, the applicant then must pass a physical examination and a driving test. Upon completion of both those tests, an applicant receives a commercial driver's license in the mail.

The defendants intervened in this process at the permit stage, helping applicants cheat on the written exam. The scheme was relatively straightforward: applicants paid members of the conspiracy for their help cheating on the written exams. In exchange for a cash payment, a

conspirator would text one of the security guards inside the DMV office, describing the applicant. The applicant would then enter the testing facility, receive a blank written exam, and wait until the security guard signaled for the applicant to leave the testing area. The applicant then left the testing facility with the test and brought it to a member of the conspiracy who was practiced at taking the permit test. The conspirator would complete the test for the applicant, and the applicant would return to the testing center, submitting the test for grading. Provided the applicant received a passing score, he was given a temporary permit and a photo identification permit was mailed to him. For their part in the conspiracy, security guards were paid in cash.

In early 2013, an undercover investigation by the New York Police Department amassed evidence of defendants' involvement in this scheme. On September 23, 2013, eleven individuals were indicted for unlawfully producing false identification documents, in violation of 18 U.S.C. § 1028(a)(1), and conspiracy to commit honest-services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. Defendants Harper, Pierre Louis, Daniel, Desmangles, and Kamara went to trial on July 13, 2015. At the close of the government's case, defendants moved orally for acquittal pursuant to Federal Rule of Criminal Procedure 29(a), and that motion was denied. On July 17, 2015, a jury found each of the defendants guilty of the charged offenses. Defendants now move pursuant to Rule 29(c).

## DISCUSSION

To prevail on a motion for a judgment of acquittal under Rule 29, a defendant must show "the evidence is insufficient to sustain the conviction." Fed. R. Crim. P. 29. "A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." United States v. Kozeny, 667 F.3d 122, 139 (2d Cir.

2011). This is an "exceedingly deferential standard of review." United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008). "The question is not whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Mi Sun Cho, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) (internal citations and quotation marks omitted). The evidence must be viewed "in its totality, not in isolation," United States v. Huezo, 546 F.3d 174, 178 (2d Cir. 2008), "as each fact may gain color from others," United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999). In the end, while a defendant's burden is, of course, "not an impossible one," United States v. Jones, 393 F.3d 107, 111 (2d Cir. 2004), a judgment of acquittal can be entered "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." Guadagna, 183 F.3d at 130 (citation and quotation marks omitted).

    A. Honest-Services Mail Fraud

The mail fraud statute prohibits the use of the mail to facilitate "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341. "[T]he term 'scheme or artifice to defraud'" in § 1341 "includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Despite the seeming breadth of § 1346, in Skilling v. United States, the Supreme Court limited the scope of the "honest services" type of "scheme or artifice" to only include "fraudulent schemes to deprive another of honest services through bribes or kickbacks." 561 U.S. 358, 404 (2010). The Skilling holding did not expressly address whether honest services fraud includes a fiduciary duty requirement. See id. Nonetheless, the Court described the "solid core" of the honest services doctrine as "involv[ing] offenders who, *in*

4

*violation of a fiduciary duty,* participated in bribery or kickback schemes." Id. at 407 (emphasis added). Courts have construed the Skilling decision as stating that honest services fraud includes a fiduciary duty requirement. See, e.g., United States v. Nayak, 769 F.3d 978, 981 (7th Cir. 2014) (noting that Skilling "also held that 'the violation of a fiduciary duty' was a prerequisite to an honest-services fraud conviction" (citing Skilling, 561 U.S. at 407-08)); United States v. Milovanovic, 678 F.3d 713, 722 (9th Cir. 2012), as amended (May 22, 2012) (holding that "a breach of a fiduciary duty is an element of honest services fraud under 18 U.S.C. §§ 1341 and 1346" (citing Skilling, 561 U.S. at 408-09)); United States v. Smith, 985 F. Supp. 2d 547, 590 (S.D.N.Y. 2014) (holding that "honest-services wire fraud . . . requires the violation of a fiduciary duty" (citing Skilling, 561 U.S. at 407)). The parties here agree that, as was instructed to the jury, violation of a fiduciary duty is an element of honest services fraud.[1] Defendants, however, argue that the government did not present sufficient evidence that the security guards in the DMV—Latoya Bourne and Beayaeh Kamara—owed a fiduciary duty to the DMV.

"The existence of a fiduciary duty in a criminal prosecution is a fact-based determination that must ultimately be determined by a jury properly instructed on this issue." Milovanovic, 678 F.3d at 723. "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Smith, 985 F. Supp. 2d at 599-600 (quoting EBC I, Inc. v. Goldman, Sachs &

---

[1] At trial, the jury was instructed:

> You must decide whether those security guards owe a duty of honest and faithful service to the Department of Motor Vehicles. A duty of honest and faithful service is owed whenever one person or entity places their special trust and confidence in another person to act on their behalf with honesty and forthrightness. If you determine that the Department of Motor Vehicles placed special trust and confidence in the security guards to act on its behalf with honesty and forthrightness, then the security guards owed a duty of honest and faithful services to the Department of Motor Vehicles.

Neither party objected to this instruction.

5

Co., 5 N.Y.3d 11, 19, 832 N.E.2d 26, 31 (2005)). Put differently, a fiduciary relation exists "when confidence is reposed on one side and there is resulting superiority and influence on the other." United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991) (citation omitted). "'At the heart of the fiduciary relationship' lies 'reliance, and de facto control and dominance.'" Id. (quoting United States v. Margiotta, 688 F.2d 108, 125 (2d Cir. 1982)). For purposes of an honest-services-fraud prosecution, the Court in Skilling recognized that "[t]he existence of a fiduciary relationship" is "usually beyond dispute" when the case involves a "specific relationship" such as between a public official and the public, an employee and employer, or a union official and a union member. 561 U.S. at 408 n.41 (citations omitted). Fiduciary relationships can exist in other contexts, such as where "other persons . . . assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity." United States v. Rybicki, 354 F.3d 124, 142 n.17 (2d Cir. 2003); see also Milovanovic, 678 F.3d at 724 (noting that the statute "is not limited to a formal 'fiduciary' relationship well-known in the law, but also extends to a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise").

Here, the government presented sufficient evidence from which the jury could conclude that Bourne and Kamara had fiduciary relationships with, and owed fiduciary duties to, the DMV. The DMV's metropolitan regional director, Victoria Marie Celardo, testified that the DMV had a contract with a security services company to staff security guards at DMVs. While the security guards were not employees of the DMV, according to Ms. Celardo, their job duties included keeping crowds at acceptable levels, answering questions, and preventing cheating. Ms. Celardo testified that the DMV "depended on them to let [the DMV] know if they see that cheating is going on." Based on that testimony, a rational trier of fact reasonably could have

concluded that the security guards were under a duty to act for the benefit of the DMV and that the DMV relied on the security guards to carry out their job duties.

Defendants argue that Ms. Celardo's testimony was insufficient to demonstrate that the security guards *accepted* their fiduciary obligation. "[A] fiduciary duty cannot be imposed unilaterally," Chestman, 947 F.2d at 567, and a fiduciary relationship "exists only where there is explicit acceptance of a duty . . . or where such acceptance may be implied from a similar relationship of trust and confidence between the parties," United States v. Falcone, 257 F.3d 226, 234 (2d Cir. 2001). The government did not call any security guards to testify that they accepted the duties and trust impressed on them by the DMV. Nonetheless, a reasonable juror could have concluded from the State of New York's contract with the security service company that the company and its employees understood and accepted the duties that the DMV imposed on its security guards. Additionally, based on Ms. Celardo's testimony concerning what the security guards did at the DMV, and the video recordings of the guards played for the jury, the jury could reasonably have inferred that Bourne and Kamara accepted their duty to guard against cheating.

There is sufficient evidence from which the jury could have found the fiduciary duty element of honest services mail fraud proven beyond a reasonable doubt.

B. Unlawful Production of Identification Documents

Title 18 U.S.C. § 1028(a)(1) prohibits individuals from "knowingly and without lawful authority produc[ing] . . . a false identification document." At trial, the government proved that defendants, through fraud, caused the DMV to issue false identification documents. Defendants argue that the government did not introduce any evidence that defendants or their co-conspirators produced, or aided or abetted the production of, commercial driver's licenses permits.

Whether or not defendants or their co-conspirators produced false documents is irrelevant

7

to their conviction.  The federal aiding and abetting statute, 18 U.S.C. § 2, provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."  18 U.S.C. § 2(b).  The government proved at trial that defendants aided and abetted the production of fraudulently-obtained identification documents by assisting individuals in cheating on the commercial driver's license written test, with the intent that the DMV would produce false identification documents for those individuals.  "Because [defendants] specifically intended for the DMV to issue [] fraudulent identification card[s] and license[s], it does not matter . . . who actually produced the license[s]. . . ."  United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003) (citing United States v. Ruffin, 613 F.2d 408, 412 (2d Cir. 1979));  see also United States v. Vanegas, 294 F. App'x 537, 541 (11th Cir. 2008) (same).  The government offered sufficient evidence from which the jury could have found defendants guilty of causing the unlawful production of false identification documents.

Defendants also argue that the government did not charge them with aiding and abetting the production of identification documents, which made it error for the Court to instruct the jury that defendants are guilty if they "caused" the commercial driver's license permits to be produced.  Defendants did not object to the Court's instruction, and therefore it is reviewed for plain error.  See United States v. Botti, 711 F.3d 299, 308 (2d Cir. 2013).  A conviction on an aiding and abetting theory is proper, even if the government did not specifically charge defendants under 18 U.S.C. § 2.  "[I]t is well established that a trial judge may properly give an aiding and abetting instruction even if the indictment does not expressly charge a violation of 18 U.S.C. § 2."  United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994); see also United States v. Smith, 727 F.2d 214, 217-18 (2d Cir. 1984).  "The federal aiding and abetting statute,

18 U.S.C. § 2, does not penalize conduct apart from the substantive crime with which it is coupled." Mucciante, 21 F.3d at 1234. "Section 2 merely obviates the need for awkward phrasing and strained readings of statutes by making clear that in all crimes an accessory will be punished as a principal." Rashwan, 328 F.3d at 165. Thus, "an aiding and abetting charge is arguably implicit in every indictment." Mucciante, 21 F.3d at 1234. It was not error to instruct the jury that defendants are guilty if they "caused" false identification documents to be produced. See Rashwan, 328 F.3d at 165 (upholding a conviction under 18 U.S.C. § 1028(a)(1) on an aiding and abetting theory even though the government did not specifically charge the defendant under 18 U.S.C. § 2(b)).

Accordingly, the jury was properly charged as to the elements of § 1028(a)(1), and defendants' conviction for causing the production of false documents under § 1028(a) is supported by the evidence before the jury.

* * *

Defendants' objections to the jury verdict are without merit. For the reasons stated above, defendants' Rule 29 motion for acquittal is denied.

SO ORDERED.

Dated: Brooklyn, New York
      October 15, 2015

                                    /s/ Judge Raymond J. Dearie
                                    _____
                                    RAYMOND J. DEARIE
                                    United States District Judge